## Case No. 14,703.

### UNITED STATES v. BUTTERFIELD et al.

[7 Ben. 412.] 1

District Court, S. D. New York. Aug., 1874.

LIABILITY OF ASSISTANT TREASURER OF THE UNITED STATES FOR MONEY LOST—COMMISSION ON SALE OF STAMPS.

1. While B. was assistant treasurer of the United States at New York, certain moneys, in his hands as such officer, were lost by clerks. The United States brought suit on his official bond, to recover the amount. After the commencement of the suit. B. made a claim to the proper department of the government, for an allowance on the sales of stamps by him as such assistant treasurer, sufficient to make the amount of 5 per cent. on the amount of the sales, including the sum which he had allowed to the persons to whom he had sold the stamps, under the 170th section of the act of June 30th, 1864 (13 Stat. 297). The government disallowed the claim, holding that, under the 6th and 22d sections of the act of August 6th, 1846 (9 Stat. 65), he was not entitled to anything for such sales above the sum which he had allowed to others, as above stated. The allowance so claimed was more than the amount of money lost; and the bondsmen claimed that it should be made by the government. If it was made, nothing was due on the bond: Held, that B. and his bondsmen were liable on their bond for the money lost.

2. The provisions of the 22d section of the act of August 6, 1846, were inconsistent with those of the 170th section of the act of June 30, 1864, and the later one must prevail.

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

3. B., therefore, was entitled to the allowance which he claimed; it made no difference that the claim for the allowance was not made till after this suit was brought; and the defendants were entitled to judgment.

At law.

George Bliss, U. S. Dist. Atty.
William D. Shipman, for defendants.

BLATCHFORD, District Judge. On the 23d of June, 1869, the defendant Daniel Butterfield was appointed assistant treasurer of the United States, and treasurer of the assay office, at New York. On the 26th of June, 1869, he, as principal, and the other four defendants, as sureties, executed a bond to the United States, reciting the appointment of Butterfield to said office on said day, and conditioned that the bond should be void, if Butterfield "has truly and faithfully executed and discharged, and shall truly and faithfully continue to execute and discharge, all the duties of said office, according to the laws of the United States, and, moreover, has well, truly and faithfully kept, and shall well, truly and faithfully keep, safely, without loaning, using, depositing in banks, or exchanging for other funds than as allowed by the act of congress hereinafter specifically referred to and described, all the public money collected by him, or otherwise at any time placed in his possession and custody, till the same has been, or shall be, ordered by the proper department or officer of government to be transferred or paid out. and, when such orders for transfer or payment have been, or shall be, received, has faithfully and promptly made, and shall faithfully and promptly make, the same as directed, and has done, and shall do and perform, all other duties, as fiscal agent of the government, which have been, or may be, imposed by any act of congress, or by any regulation of the treasury department, made in conformity to law, and also has done and performed, and shall do and perform, all acts and duties required by law, or by direction of any of the executive departments of the government, as agent for paying pensions, or for making any other disbursements which either of the heads of those departments may be required by law to make, and which are of a character to be made by a depositary constituted by an act of congress, entitled 'An act to provide for the better organization of the treasury, and for the collection, safekeeping, transfer and disbursement of the public revenue,' approved August 6, 1846, consistently with the other official duties imposed upon him," and that otherwise such bond should remain in force. The plaintiffs bring suit on the bond, and assign, in the declaration, as a breach of the condition of the bond, that the defendant Butterfield did not truly and faithfully continue to execute and discharge all the duties of the said office, according to the laws of the United States, and did not faithfully and

promptly make transfers or payments of all the public money collected by him, or otherwise at any time placed in his possession and custody, when the same was ordered by the proper department or officer of government to be transferred or paid out, and when said orders were received, as directed, and did not perform all other duties, as fiscal agent of the government, which had been, and were thereafter, and during his occupancy of said office, imposed by any act of congress, or any regulation of the treasury department, made in conformity to law, but on the contrary, on the 16th of November, 1869, wrongfully converted to his own use the sum of $2,-219 00, currency of the United States, and $100 00, gold coin of the United States, which money was the property of the United States, and collected by him, or placed in his possession and custody, as such assistant treasurer and treasurer of the assay office, and did not faithfully and promptly make transfers or payments thereof, although the same were ordered by the proper department and officer of the government to be transferred and paid out, and said orders were received by him, as he was directed. The declaration claims, as damages, $2,219 00 currency, and $100 00 gold.

The defendant Butterfield entered upon the duties of said office, and continued therein until the 16th of November, 1869, when he resigned. In the discharge of the duties of said office, which involved the receiving, handling, care and disbursement of very large sums of money daily, he was assisted by a large number of clerks and other subordinates. Among said clerks were one Field and one Tandy. All of said clerks and subordinates in said office were, and always have been, in practice, nominated by the assistant treasurer, and confirmed by the secretary of the treasury, and, before entering upon their duties, are required to take, and did, in fact, take, the oath required by the 1st section of the act of August 6, 1861, 12 Stat. 326. None of said clerks or subordinates receive any commission or formal evidence of their appointment, except notice of their nomination and approval. In fact, they could be, at any time, suspended by the assistant treasurer and removed by him, subject to the approval of the secretary of the treasury. The assistant treasurer always assigned to each of said clerks and subordinates their duties, and changed said duties at will. For the convenient transaction of the business of said office, the same is, under the direction of the assistant treasurer, divided into departments, one of which is designated as the "currency receiving department." During all the time the defendant Butterfield filled the office of assistant treasurer, the said currency receiving department was under the charge of said Field, as its chief. On the evening of the 21st of August, 1869, a deficit was discovered in the currency funds of said department, to the

amount of $2,075 00, and the same has never been recovered, nor has the amount thereof ever been accounted for, or paid over, to the plaintiffs. During the time the defendant Butterfield so acted as assistant treasurer at New York, said Tandy was employed in the gold room, in the office of said assistant treasurer, and had charge, during the day, of the gold and silver coin which might be received therein. On the 6th of August, 1869, a deficit of $100 00 in gold coin was discovered in the cash room of said Tandy, when making up proof, and the said missing $100 00 has never been recovered, nor its loss accounted for, nor has the same ever been paid to the plaintiffs. When the defendant Butterfield entered upon the duties of his said office, he found said Field and said Tandy employed therein, they having been appointed during the term of the predecessor in office of the defendant Butterfield. The defendant Butterfield gave them no new appointment, but knew that they were so employed, as they had been since 1864, and did not suspend them or attempt to remove them. On entering upon the duties of his office, he announced to all employed therein, that they would be retained in their places until removed. Field and Tandy have ever since remained employed in said office. Neither the plaintiff nor the defendant Butterfield have ever been able to discover the cause of the disappearance of the money so lost. though the fact of such loss was immediately made known, and every effort was put forth to ascertain the manner in which such loss occurred; but there is no evidence or reason to believe, nor do any of the parties to this suit believe or suspect, that any portion of such money was taken by said Field or said Tandy, or with their connivance, knowledge or consent. The same never came into the hands of the defendant Butterfield, although it was part and parcel of the public moneys in the assistant treasurer's office, belonging to the plaintiffs, nor was the defendant Butterfield guilty, in any manner, of any actual wrong or neglect in reference thereto, nor is he, in any manner, chargeable with, or responsible for, said loss, except as he may be held responsible in judgment of law.

The defendant Butterfield, between the 23d of June, 1869, and the 16th of November, 1869, and while he was discharging the duties of said office of assistant treasurer, was, in conformity with the 170th section of the act of June 30, 1864, 13 Stat. 297, supplied by the commissioner of internal revenue, with revenue stamps of the character named in that section, for sale for the accommodation of the public, as therein provided, and such stamps, between such dates, were delivered by said commissioner to the defendant Butterfield, for that purpose, to an amount exceeding in value the sum of $1,669,637 50, and the defendant Butterfield actually sold the same to the amount of that sum, and fully

accounted for the proceeds thereof to the plaintiffs. The said 170th section contains this provision: "In any collection district where, in the judgment of the commissioner of internal revenue, the facilities for the procurement and distribution of * * * * adhesive stamps are or shall be insufficient, the commissioner as aforesaid is authorized to furnish, supply and deliver to the collector, and to the assessor of any such district. and to any assistant treasurer of the United States, or designated depositary thereof, or any postmaster, a suitable quantity or amount of * * * adhesive stamps, without prepayment therefor, and shall allow the highest rate of commissions allowed by law to any other parties purchasing the same." The 161st section of the same act contains this provision: "The commissioner of internal revenue * * * is hereby authorized to sell to and supply collectors, deputy collectors, postmasters, stationers, or any other persons, at his discretion, with adhesive stamps ، * * * as herein provided for, in amounts of not less than fifty dollars, upon the payment, at the time of delivery, of the amount of duties said stamps, * * * so sold or supplied, represent; and may allow upon the aggregate amount of such stamps, as aforesaid, the sum of not exceeding five per centum, as commission to the collectors, postmasters, stationers or other purchasers." Five per centum on the amount of stamps so received and sold by the defendant Butterfield was $83,481 87. In the settlement of the stamp account of the defendant Butterfield with the plaintiffs, they allowed him, as the amount of such commissions to which he was entitled, the sum of $73,645 64, and no more, such last named sum being the sum which he had allowed to the persons to whom he had sold said stamps. In October, 1873, and after the commencement of this suit, and not before, the defendant Butterfield made to the proper department of the government a claim to have allowed and paid to him the balance of said five per centum on the amount of said stamps so received and sold by him, namely, the sum of $9,836 23. On the 8th of November. 1873, such claim was rejected.

The foregoing facts are not in dispute. The defendants deny the liability of the defendant Butterfield for the money lost, and, if liable for it on the bond, claim to have allowed, in extinguishment of it, so much of the $9,-836 23 as is sufficient for that purpose.

While there cannot be any doubt, upon principle and authority, that the defendants are liable, on their bond, for the money lost, 1 think it cannot be recovered in this suit. because the defendant Butterfield is entitled to the allowance claimed.

The ground on which the claim was disallowed by the treasury department was, that, by the 22d section of the act of August 6th, 1846 (9 Stat. 65), it is declared that the salary of the assistant treasurer shall be in full for his services, and that he shall not charge or receive any commission, pay or perquisite for any official service of any character or description whatsoever; and that, by the ,6th section of the same act, he is required to do and perform all acts and duties required by law or by direction of any of the executive departments of the government. These provisions of law were regarded by the treasury department as still in force, and in view of them, and of the fact that the office of the assistant treasurer at New York was held to be part of the treasury itself, the department refused to allow to the defendant Butterfield any commissions on stamps beyond what he had allowed to purchasers of them from him.

By the 161st section of the act of 1864, congress adopted the policy of permitting the commissioner of internal revenue to sell stamps to officers such as collectors, deputy collectors, and postmasters, in certain amounts, on prepayment therefor of their face value, less a commission, to be allowed to such officers, of not exceeding five per centum on the aggregate amount of the stamps. By the 170th section of the same act, in order to increase the facilities for procuring stamps, it authorized the commissioner to furnish stamps to collectors, assessors, assistant treasurers, designated depositaries, and postmasters. without limit as to amount, and without prepayment, and prescribed that he "shall allow the highest rate of commissions allowed by law to any other parties purchasing the same." Under the 170th section, the officers named therein, when supplied with the stamps, became purchasers of them, as fully as the officers named in the 161st section became purchasers of stamps, when supplied with them under that section. The price was not to be paid in advance, but was to be the face value of the stamps, less the highest rate of commissions allowed by law to any other purchaser. This rate, by the 161st section, was five per centum. By the 170th section, if the commissioner chose to supply the stamps to an assistant treasurer, the allowance of the five per centum commission was made imperative. The words are "shall allow." This allowance, so far as assistant treasurers are concerned, is inconsistent with the provisions of the 22d section of the act of 1846. The two cannot stand together. The later one must prevail.

The fact that the claim for the allowance was not made till after this suit was brought is of no importance.

On the agreed statement of facts, there must be judgment for the defendants.

[Subsequently a motion. on affidavits made by the district attorney of the United States, for leave to put in further evidence tending to show error in the statement of accounts of the treasury department, on which the case had been submitted to the court, was denied. Case No. 14,704.]